IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN MCVAUGH,<br><br>        Plaintiff,<br><br>v.<br><br>FRANKLIN TOWNSHIP,<br><br>        Defendant. | CIVIL ACTION NO. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

Plaintiff Joan McVaugh, by and through her attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint"):

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages, liquidated damages, attorneys' fees and other relief on behalf of Plaintiff Joan McVaugh ("Ms. McVaugh"), a former employee of Franklin Township ("Franklin" or "Defendant"). Despite her lengthy service with Franklin, undisputed experience and excellent performance, Ms. McVaugh has been harmed by Defendant's harassment and discrimination based on her age and sex, resulting in her unlawful termination.

2. This action is filed pursuant to the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA") and the Pennsylvania Wage Payment and Collection Law, 43 Pa. C. S. § 260.1, et seq. ("WPCL").

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On December 6, 2021, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On March 14, 2023, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice. With respect to the PHRA claims herein, it has been more than one year since Plaintiff dual-filed her Charge of Discrimination as a Complaint with the PHRC.

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed and terminated by Defendant in this judicial district.

**PARTIES**

9. Plaintiff Joan McVaugh is an adult female citizen and resident of Hockessin, Delaware and the United States of America.

10. Ms. McVaugh is seventy-four years old and within the class of individuals protected by the ADEA.

11. At the time of her termination, on or about September 15, 2021, Ms. McVaugh was seventy-two years old.

12. Franklin Township is a township in Chester County, Pennsylvania.

13. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

14. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of employment under the direct control of Defendant.

15. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

16. At all relevant times hereto, Plaintiff Joan McVaugh was an "employee" of Defendant within the meaning of the laws at issue in this suit and is accordingly entitled to the protections of said laws.

17. At all relevant times hereto, Defendant was an "employer" and/or "person" as defined by the laws at issue in this suit and is accordingly subject to the provisions of said laws.

18. This Honorable Court has jurisdiction over Defendant.

**FACTS**

19. Beginning in May of 2005, Ms. McVaugh acted as Treasurer for Defendants, and in January 2012, Ms. McVaugh began serving as the Manager and Treasurer for Franklin Township.

20. Ms. McVaugh excelled in her position and performed her duties in an excellent and professional manner for Franklin Township for approximately seventeen (17) years.

21. In fact, during her seventeen years of successful employment with Defendant, Ms. McVaugh received abundant praise, annual raises, had always received bonuses for the quality of her work and had received consistently excellent performance reviews.

22. During the year that the salt shed was built, Ms. McVaugh received an additional $1,000 bonus as recognition of her excellent handling of the construction.

23. Despite her loyalty and consistent performance, however, Ms. McVaugh, an older female individual, was subjected to discrimination and harassment on the basis of her sex and age, was ultimately terminated on September 15, 2021 due to such discrimination, and was replaced by a younger, male individual.

24. Ms. McVaugh initially began her employment for Franklin as a Bookkeeper in or about July 2004.

25. Shortly thereafter, in or about 2005, upon the resignation of the Manager/Treasurer, Ms. McVaugh was given the title of Treasurer.

26. In December 2011, Franklin Township requested that Ms. McVaugh become the Part-Time Manager in addition to her Treasurer duties.

27. One month later, in January 2012, Franklin Township appointed Ms. McVaugh to full time Treasurer and Manager, which position she held for nearly the next decade, until her termination on September 15, 2021.

28. During her employment, Ms. McVaugh was subjected to consistent and pervasive harassment by former Chairperson (who then became a Board member) Nancy Morris and former Chairperson (who then became Board member) John Auerbach.

29. This consistent pervasive harassment included, among other things, false accusations against Ms. McVaugh from Nancy Morris and John Auerbach, both of whom possessed pre-existing discriminatory animus against Ms. McVaugh.

30. Throughout her employment with Franklin Township, Ms. McVaugh was subjected to discrimination and harassment on the basis of her sex.

31. In particular, John Auerbach repeatedly subjected Ms. McVaugh to harassing and discriminatory comments on the basis of her sex.

32. In one email exchange, Mr. Auerbach informed Ms. McVaugh that if his memo made her uncomfortable, then it was "intended" to do so.

33. Mr. Auerbach's dislike and harassment of women was well known but widely accepted by Franklin Township, as Ms. McVaugh was told by other supervisors that "you know how John is" and was repeatedly reminded that he was overly critical of women and mistreated women in powerful roles.

34. One supervisor apologized to Ms. McVaugh about Mr. Auerbach after one of Mr. Auerbach's inflammatory emails, stating that Mr. Auerbach "has a pattern of talking down to people, especially women."

35. Any alleged claims that Ms. McVaugh had communication deficiencies were communicated by Mr. Auerbach, who was well-known for his criticism and harassment of women.

36. The majority of the Board did not agree with Mr. Auerbach's biased and discriminatory opinion when he expressed any alleged dissatisfaction with Ms. McVaugh's performance.

37. Indeed, the feedback Ms. McVaugh received from colleagues and the Board indicate that Ms. McVaugh had no issues with communication.

38. On another occasion, Mr. Auerbach sent Ms. McVaugh an inflammatory document labeled as a "performance review."

39. This "performance review" was essentially an excuse for Mr. Auerbach to publicly demean and chastise Ms. McVaugh on certain decisions and actions she had taken.

40. Notably, when the other supervisors saw the review, they gave Ms. McVaugh their full support and indicated their belief that Mr. Auerbach should resign.

41. Ms. McVaugh was also harassed and discriminated against on the basis of her age.

42. Other than the Chairman and Mr. Auerbach, all the other employees of Franklin Township and Board were younger than Ms. McVaugh.

43. Moreover, at one point during her employment, Ms. McVaugh was caught off guard by Nancy Morris when she asked if Ms. McVaugh was retiring.

44. Ms. McVaugh indicated that she had no plans to retire, as she planned to work as long as her mind and body were working.

45. The interaction Ms. McVaugh had with Ms. Morris regarding retirement was unprompted and discriminatory.

46. Ms. McVaugh did not bring up the subject of retirement at all – it was Ms. Morris who initiated the conversation, which left Ms. McVaugh confused since she had never even remotely communicated that she wanted to retire.

47. Instead, it was Ms. Morris' perception of Ms. McVaugh as "too old" that caused her to bring up retirement.

48. Ms. Morris made several comments that made clear that she believed Ms. McVaugh to be too old to perform her job.

49. Among other things, Ms. McVaugh's recent performance review states that she was "difficult to convince to try new ways," provided answers "slowly," and that Ms. McVaugh "needs to raise her game in terms of technology acumen, [as it] … is not an optional skill anymore."

50. Each of the above comments are nothing more than thinly veiled references to Ms. McVaugh's age.

51. In more recent years, Ms. McVaugh had been the subject of numerous false accusations by Ms. Morris, including that Ms. McVaugh had conspired with a long-time Township contractor to give him work in exchange for payments under the table.

52. Ms. Morris also asked Ms. McVaugh if she "sold logs and pocketed half the money."

53. Ms. Morris also disparaged Ms. McVaugh to two new Township supervisors, informing them that Ms. McVaugh "could not be trusted."

54. Ms. Morris also sent emails to several Board members and Township employees questioning Ms. McVaugh's integrity with respect to a particular expenditure which had been known and discussed with other members of the Board.

55. This discriminatory and harassing treatment was witnessed by other members of the Board, including Secretary Sharon Norris.

56. Ms. Norris observed that Ms. Morris had unfairly harassed Ms. McVaugh and inappropriately disparaged her on social media by making unfair and untrue accusations about her that resulted in undue stress and upheaval of Franklin Township.

57. Specifically, in or about September 2020, Ms. Morris stated to the Board that Ms. McVaugh was a terrible manager.

58. Ms. Norris responded to the email while handing in her resignation, stating that:

> "Nancy it was you harassing Joan, making unfair and untrue accusations about Joan that led to the stress and upheaval in this office. Joan has been a very competent manager. In the 14+ years I have been here she has bent over backwards to help residents and the staff…[b]ut your treatment of her, you making comments on Facebook diminishing her, accusing her that she's in cahoots with Jim of all people and causing all kinds of unnecessary work that had to be done while you were trying to prove that Joan was incompetent was what made me explore other options."

59. This email demonstrates that Ms. Norris recognized that Ms. Morris had been unfairly harassing Ms. McVaugh and that Ms. McVaugh had been a good and competent manager throughout her entire tenure of employment.

60. Ms. McVaugh was also given a performance review without any advance notice and which was sent to the Board but not to Ms. McVaugh.

61. Ms. McVaugh was constantly under attack, such as when Ms. Morris would harass Ms. McVaugh by questioning the amount of time she spent on treasury work when she was "just a bookkeeper" or when she would spout unfounded accusations against Ms. McVaugh.

62. The constant barrage of harassment from Ms. Morris reached a point where Ms. McVaugh did not dare to take time off in 2020 other than to attend her brother-in-law's funeral and after she underwent neck surgery.

63. Ms. Morris further demonstrated her discriminatory animus against older individuals by seeking to oust another older employee.

64. With respect to that employee, the employee made clear that she wanted to remain employed, but consistently felt that Ms. Morris wanted to get rid of her.

65. In fact, Ms. Morris had been informing supervisors that this employee wanted to leave her employment with the Township to retire – which was not true and directly contradicted the employee's statements.

66. In a final act of discrimination on the basis of Ms. McVaugh's age and sex, Ms. McVaugh was terminated without any legitimate grounds, having been informed only that she was "being replaced."

67. Ms. McVaugh's replacement with respect to her Manager duties was a significantly younger male, Jeffrey Eastburn.

68. Despite Ms. McVaugh's extensive experience and glowing reviews, Mr. Eastburn was praised by Franklin Township and was chosen to replace Ms. McVaugh for no legitimate reason.

69. Even more tellingly, Ms. McVaugh learned that, for some time prior to her termination, she had been excluded from calls and information to which she should have been included for her position, while the Township was secretly involving Mr. Eastburn in such calls and meetings, without Ms. McVaugh's knowledge and behind her back.

70. In addition, the Administrative Assistant, Melissa Ortega, who is the youngest employee, was appointed to the position of Controller and Office Manager and assumed many of Ms. McVaugh's former duties as Treasurer.

71. There was no justification or legitimate grounds for Ms. McVaugh's termination.

72. Throughout her lengthy employment with Franklin Township, Ms. McVaugh had provided exceptional service and work performance.

73. The treatment that Ms. McVaugh was subjected to during her employment indicates that Ms. McVaugh's termination was the result of discrimination on the basis of her age and sex.

74. Given her treatment during her employment with Franklin Township and the circumstances surrounding her termination, Ms. McVaugh was subjected to discrimination and harassment on the basis of her sex and age, in violation of the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act, and the Pennsylvania Human Relations Act.

75. In addition to the discrimination and harassment she experienced, following her termination, Ms. McVaugh was denied earned wages in the form of accrued vacation pay.

76. At the time of her termination, Ms. McVaugh had earned and was entitled to payout of twenty-four earned, but unused vacation days.

77. Defendant paid her for only seventeen of those days and Ms. McVaugh is thus still owed for seven earned, but unpaid vacation days.

78. Despite demand for payment, Defendant failed to pay Ms. McVaugh these earned wages within the time required by the WPCL.

79. There is no good faith dispute that these wages are owed.

80. As a result of her termination, Ms. McVaugh has lost salary and benefits, as well as other losses. Ms. McVaugh was not informed of the cancellation of her health insurance, and was not provided appropriate notice pursuant to COBRA.

81. The adverse actions taken against Ms. McVaugh were pretextual.

82. Despite her loyalty, dedication and excellent performance, given her treatment during her employment with Franklin Township, Ms. McVaugh maintains that Defendant discriminated against and harassed her on the basis of her age and sex, and that her termination was a result of such discrimination and harassment.

83. Ms. McVaugh has suffered significant emotional hardship and loss due to Defendant's wrongful acts, as alleged herein.

84. Ms. McVaugh has suffered and continues to suffer mental anguish and severe emotional distress as a proximate result of the actions and/or inactions of Defendant.

85. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. McVaugh severe emotional distress.

86. Due to the Defendant's wrongful actions and/or inactions, Ms. McVaugh has suffered significant damages to her career prospects and professional reputation.

87. Ms. McVaugh has suffered financial losses and economic harm as a direct and proximate result of the actions and inactions of Defendant.

## COUNT I
### Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.

88. Plaintiff Joan McVaugh repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

89. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the ADEA.

90. Plaintiff is and was at the time of her termination, over forty years of age, and an individual within the class protected by the ADEA.

91. In discriminating against and harassing Ms. McVaugh because of her age, Defendant violated the ADEA.

92. Defendant intentionally and willfully violated the ADEA, as Defendant knew that its actions violated the ADEA and/or acted with reckless disregard as to whether its actions violated the ADEA.

93. Defendant's willful violations of the ADEA warrant an award of liquidated damages.

94. As the direct result of the aforesaid unlawful employment practices engaged in by Defendant, Plaintiff Joan McVaugh has sustained a loss of earnings, loss of severance, retirement and other benefits, severe emotional and psychological distress, loss of self-esteem, loss of reputation and opportunity for career advancement, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred an obligation for attorneys' fees and costs.

**COUNT II**
**Title VII of 1964, 42 U.S.C. § 2000(e), et seq.**

95. Plaintiff Joan McVaugh repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

96. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), et seq.

97. In discriminating against and harassing Ms. McVaugh on the basis of her sex and her age, Defendant violated Title VII.

98. Said violations were intentional and willful.

99. Said violations warrant the imposition of punitive damages.

100. As the direct and proximate result of Defendant's violation of Title VII, Plaintiff Joan McVaugh has sustained loss of earnings, loss of severance, retirement and other benefits, severe emotional and psychological distress, loss of self-esteem, loss of reputation and opportunity for career advancement, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred an obligation for attorneys' fees and costs.

## COUNT III
### Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

101. Plaintiff Joan McVaugh repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

102. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

103. In discriminating against and harassing Ms. McVaugh on the basis of her sex and her age, Defendant violated the PHRA.

104. As the direct and proximate result of Defendant's violations of the PHRA, Plaintiff Joan McVaugh has sustained loss of earnings, loss of severance, retirement and other benefits, severe emotional and psychological distress, loss of self-esteem, loss of reputation and opportunity for career advancement, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred an obligation for attorneys' fees and costs.

## COUNT IV
### Pennsylvania Wage Payment and Collection Law

105. Plaintiff Joan McVaugh repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

106. Defendant violated the Pennsylvania Wage Payment and Collection Law when it failed to pay Ms. McVaugh her earned wages within the time specified by law.

107. At all relevant times, Defendant was an employer within the meaning of 43 Pa. C. S. § 260.2(a) of the WPCL.

108. Defendant willfully failed to pay Plaintiff wages earned as defined by the WPCL during the course of her employment within the time limits prescribed by the WPCL.

109. Following Plaintiff's complaints and demands that payment be made, Defendant willfully failed to pay Ms. McVaugh her earned wages, including earned but unused vacation pay, within the time limits prescribed by the WPCL.

110. Defendant has failed to pay wages due for a period in excess of thirty (30) days beyond regularly scheduled paydays.

111. As the direct and proximate result of Defendant's violations of the Pennsylvania Wage Payment and Collection Law, Plaintiff has sustained a loss of earnings, liquidated damages, and interest due thereon and has incurred attorneys' fees and costs. Defendant's actions warrant the imposition of liquidated damages in accordance with the WPCL.

## PRAYER FOR RELIEF

112. Plaintiff Joan McVaugh repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Joan McVaugh respectfully requests that this Court enter judgment in her favor and against Defendant:

a. Enjoining future violations of the ADEA, Title VII and PHRA by Defendant;

b. Ordering appropriate equitable relief, including reinstatement, or front pay and all outstanding benefits;

c. Ordering Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful conduct in violation of the ADEA, Title VII and the PHRA;

d. Ordering Defendant to pay Plaintiff for all compensatory damages suffered;

e. Ordering Defendant to pay Plaintiff her earned but unpaid wages;

f. Ordering Defendant to pay Plaintiff liquidated damages;

g. Ordering Defendant to pay Plaintiff punitive damages;

h. Ordering Defendant to pay Plaintiff's attorneys' fees and costs of bringing this action;

i. Ordering Defendant to pay Plaintiff all damages available pursuant to the ADEA, Title VII, the PHRA and the WPCL, and any other applicable statutes or common law; and

j. Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Joan McVaugh hereby demands trial by jury as to all issues so triable.

By: */s/ Christopher A. Macey, Jr.*
    Christopher A. Macey, Jr., Esquire
    Bell & Bell LLP
    1617 John F. Kennedy Boulevard
    Suite 1254
    Philadelphia, PA 19103
    (215) 569-2500

    *Attorneys for Plaintiff Joan McVaugh*

Dated: June 9, 2023